Filed 3/27/14  P. v. Ruiz CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>FREDDY SANTOS RUIZ,<br><br>  Defendant and Appellant. | 2d Crim. No. B251001<br>(Super. Ct. No. 1437035)<br>(Santa Barbara County) |

Freddy Santos Ruiz appeals a probation restitution order following his no contest plea to receiving stolen property--a motorcycle (Pen. Code, § 496, subd. (a)),[1] a misdemeanor, and two counts of resisting arrest (§ 148, subd. (a)(1)), misdemeanors. Ruiz was placed on three years probation and the trial court ordered him to pay $1,492.34 as restitution to the victim.  We conclude the trial court did not abuse its discretion by ordering the monetary restitution.  We affirm.

FACTS

Ernest Johnson owned two motorcycles.  On January 15, 2013, they were stolen.

On January 19, the police saw Ruiz pushing one of the stolen motorcycles. Ruiz saw the police and ran away.  He was subsequently arrested.  He pled no contest to possessing stolen property--the motorcycle.  The trial court held a restitution hearing.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Johnson testified that after the stolen motorcycle was returned to him, he noticed substantial damage. He said, "[It] was in such bad shape that it wouldn't kick start." Somebody had spray painted it different colors. The rear tire was bald. The "front fork guard was busted off," and the chain was damaged. Someone had "unbolted the plastic peel," and nuts, bolts and screws were missing. The cost for repairing the damage was $1,492.34.

Ruiz testified that as part of his negotiated plea agreement, he "[pled] no contest to being in possession of a stolen motorcycle" and agreed "to pay restitution in this case." He said he found the motorcycle in an alley near a trashcan and thought it was "garbage." While pushing the motorcycle down the street away from the alley, he saw the police, he dropped the motorcycle, and ran away. He was willing to pay only for the damage he caused when he dropped the motorcycle when he spotted the police.

The trial court ordered Ruiz to pay restitution in the amount of $1,492.34. It said Ruiz's "dishonesty is so tainted . . . I don't believe anything he said, and I think he was probably the thief."

DISCUSSION

*The Restitution Order*

Ruiz contends the trial court abused its discretion by ordering him to pay $1,492.34 as restitution for the damages to the motorcycle as a probation condition. We disagree.

Trial courts have "broad discretion to impose probation conditions to foster rehabilitation and to protect public safety." (*People v. Anderson* (2010) 50 Cal.4th 19, 26.) Monetary restitution to the crime victim is an "expressly authorized" condition of probation. (*Id.* at p. 27; § 1203.1.) Here Johnson testified $1,492.34 was required to repair the damages to his motorcycle. The trial court ordered restitution in that amount.

Ruiz argues he was convicted of receiving the motorcycle as stolen property, not theft. He claims that: 1) there is no evidence he took the motorcycle on January 15 or caused the damage Johnson claimed; and 2) restitution is limited to losses

2

caused by his crime, which would only be the damage "that could have occurred from [his act of] dropping the bike" when he saw the police.

In response, the People correctly note that there is a difference between victim restitution orders for defendants sentenced to prison, and those, such as Ruiz, who are placed on probation.

"[W]hen a court imposes a prison sentence . . . [Penal Code] section 1202.4 limits the scope of victim restitution to losses caused by the criminal conduct for which the defendant sustained the conviction." (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1050.) But "[t]his limitation does not apply in the context of grants of probation." (*Ibid.*) "'California courts have long interpreted the trial court's discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction.'" (*People v. Anderson*, *supra*, 50 Cal.4th at p. 27.) "'Under certain circumstances, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal.'" (*Ibid.*) "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*Ibid*.)

The issue is whether the restitution order "'is reasonably related to the crime of which the defendant was convicted'" or to the goal of deterring "'future criminality.'" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1123.) The order satisfies these requirements.

Ruiz contends the finding that he stole the motorcycle was not supported by the record. But the trial court could reasonably draw incriminating inferences from Ruiz's testimony at the restitution hearing.

Ruiz pled no contest to possessing the motorcycle as stolen property. But at the restitution hearing, he testified to a different version of facts. He said he found the motorcycle in an alley near a trashcan and thought it was "garbage." But this innocent

3

explanation was contradicted by his testimony that while pushing the motorcycle he saw the police and ran away. From that conduct, the trial court could reasonably infer he had a consciousness of guilt. Ruiz testified he believed the motorcycle did not belong to anyone. But that contradicted the plea he entered. Ruiz later testified the motorcycle was not abandoned. But that contradicted his earlier testimony. Ruiz initially said he could not remember where the alley was located. He later identified the location, an area "less than a quarter of a mile" from Johnson's home.

Ruiz admitted knowingly possessing a stolen motorcycle which had been damaged after it was taken from Johnson on January 15. From his contradictory testimony, the trial court found Ruiz was not credible. It could reject his claim that he only took the motorcycle on January 19 and infer it was earlier. It could reasonably find his testimony about not taking the bike on January 15 was false.

But even without the finding that Ruiz was "probably the thief," the restitution order is still "reasonably related to the crime of which [Ruiz] was convicted." (*People v. Carbajal*, *supra*, 10 Cal.4th at p. 1123.) The trial court could reject Ruiz's testimony that he did not vandalize or damage the motorcycle. Johnson testified that someone had painted the motorcycle in "different colors *with spray paint*." (Italics added.) At the restitution hearing, "the trial court is entitled to consider the probation report . . . ." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.) The probation report reflects that on January 15, 2013, the police went to a location where someone had painted "fresh graffiti." They searched Ruiz and found "a spray nozzle belonging to a paint can, and a can of *spray paint* . . . ." (Italics added.) Moreover, Ruiz's crime of receiving stolen property was also related to the January 15th theft because his actions continued the unlawful possession that had deprived Johnson of the use of his property. Ruiz said he was responsible for any damage to the motorcycle caused by his act of dropping it when he ran from police. The trial court could reasonably find that conduct was related to restitution because it increased the damages for the victim. Johnson testified "the fork was gashed" and "torn to pieces" when "they laid it down when the police were chasing them . . . ."

4

The People claim the restitution order also furthers the goal of deterring Ruiz from future criminality.  They suggest it is consistent with the goals of his probation.  We agree.

As the People note, the probation report indicated that Ruiz is a young adult who had prior sustained juvenile petitions (Welf. & Inst. Code, § 602) for battery and vandalism, and adult convictions for battery and possession of marijuana.  The probation officer said Ruiz sometimes has a recalcitrant attitude, but he "does possess aspirations to better himself and avoid further trouble."  The trial court could reasonably find the restitution order would further these goals:  1) by forcing him to consider the consequences of his actions, 2) by requiring him to take responsibility for them, and 3) as an incentive to deter him from committing future crimes.  Ruiz had committed vandalism in the past.  The restitution order would be an incentive for him to learn to respect other people's property.  There was no abuse of discretion.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

5

Rodney S. Melville, Judge

Superior Court County of Santa Barbara

_____

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, Taylor Nguyen, Deputy Attorney General, for Plaintiff and Respondent.