Filed 7/8/24  P. v. Earl CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B325438 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA136291) |
| v. | |
| KEVONE EARL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Affirmed.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted Kevone Earl of murder, attempted murder, and other crimes. In Earl's first appeal we reversed the judgment and directed the trial court to conduct a new trial. On remand Earl pleaded no contest to voluntary manslaughter, and the trial court sentenced him to prison for 25 years. The court also ordered Earl to pay, among other things, $5,000 in victim restitution.

In Earl's second appeal we reversed the restitution award and directed the trial court to conduct a restitution hearing. On remand the prosecution submitted a document from the Victim Compensation Board with an attachment showing the Board paid, on behalf of the victim's family, $5,000 in funeral expenses.

In this appeal, Earl's third, he challenges the trial court's order again requiring him to pay $5,000 in victim restitution. He argues that the evidence did not support $5,000 in restitution and that the court denied him a "meaningful opportunity to contest the amount of restitution." We conclude that the court did not abuse its discretion in basing the $5,000 restitution award on evidence submitted by the prosecution and that the court gave Earl and his attorney an opportunity to contest that amount. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Earl Prevails in His Two Prior Appeals*

In his first appeal Earl argued the trial court erred in denying his motion under *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258 to dismiss the panel of prospective jurors. We agreed, reversed the judgment, and directed the trial court to set the matter for a new trial. (*People v. Dixon et al.* (Apr. 10, 2019, B277759) [nonpub. opn.].)

On remand the People and Earl reached a negotiated disposition: In exchange for Earl pleading guilty or no contest to voluntary manslaughter and admitting he used a firearm in committing the crime, the court would sentence Earl to a prison term of 25 years. The trial court explained to Earl the consequences of pleading guilty or no contest and told Earl that, as part of his sentence, the court would order him to pay $5,000 in victim restitution. Earl objected to the restitution order and asked for a hearing on his ability to pay. The court stated it would issue the restitution order and hold a restitution hearing "afterwards." Earl pleaded no contest, and the court accepted his plea. The court sentenced him to a prison term of 25 years and ordered him to pay a $300 restitution fine and $5,000 in victim restitution. (*People v. Earl* (Mar. 8, 2022, B313115) [nonpub. opn.].)

Earl appealed a second time, challenging the $5,000 victim restitution award. Earl argued the trial court erred because "there was no evidence before the court" to support the order requiring him to pay restitution in this amount. We again agreed with Earl, reversed the restitution order, and directed the court

3

to hold a restitution hearing under Penal Code section 1202.4, subdivision (f).[1]

B. *Earl Appeals from the Trial Court's Second Restitution Order*

At the (second) restitution hearing, the prosecution submitted a document from the Board requesting $5,000 in restitution. The document included an attachment indicating the Board had paid $5,000 in funeral expenses on behalf of the victim's family. The victim's family also requested $13,000 in "additional expenses."

The trial court reviewed the documents from the Board and stated: "Attached are the burial expenses . . . , which is the breakdown in regards to the [$5,000] amount." Regarding the $13,000 in additional expenses requested by the victim's family, however, the trial court stated: "I don't see a breakdown as to that." The court stated it intended to award the $5,000 in victim restitution to the Board, but not the $13,000 to the family.

The trial court gave counsel for Earl an opportunity to review the documentation from the Board and challenge the prosecution's evidence regarding the restitution amount. After counsel for Earl did not respond to the court's initial inquiry, the court asked counsel specifically whether counsel wanted to dispute the breakdown of the funeral expenses in the Board's invoice. The court asked counsel for Earl: "You have read over what I'm referring to, the breakdown of the $5,000?" Counsel answered: "I'm about to. Thank you." After giving counsel for Earl a further opportunity to review the invoice, the court asked whether either attorney had anything further to say about the

---

[1] Statutory references are to the Penal Code.

4

amount of restitution.  Counsel for Earl stated:  "Nothing further" and "I've said what I wanted to say."  The trial court ruled: "Based upon the documentation . . . before me, I will award that $5,000 in victim restitution."  Earl timely appealed from the restitution order.

## DISCUSSION

Earl argues he did not have a "real restitution hearing" because the trial court "failed to explain what was happening," "failed to answer his confusion," and did not give him an opportunity to participate or to have his questions answered. Earl also argues the trial court did not give him access to the prosecution's evidence in advance of the hearing, which precluded him from confirming the accuracy of the Board's invoice and undermined his ability to dispute the restitution amount.

A.      *Applicable Law and Standard of Review*

"It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of [those] crimes."  (Cal. Const., art. I, § 28, subd. (b)(13)(A).)  Section 1202.4 provides courts may require convicted defendants to pay three types of restitution: direct restitution to compensate victims for economic loss resulting from the defendant's criminal conduct, a restitution fine to punish the defendant for such misconduct, and restitution as a condition of probation.  (*People v. Martinez* (2017) 2 Cal.5th 1093, 1100; *People v. Giordano* (2007) 42 Cal.4th 644, 651-652.)  This appeal

5

involves only the first type of restitution, direct victim restitution.

Section 1202.4, subdivision (f), provides in relevant part that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." The amount of restitution must include any assistance provided by the Restitution Fund "to or on behalf of a victim or derivative victim." (§ 1202.4, subd. (f)(4)(A).) The Restitution Fund is administered by the Board and offers financial aid to crime victims to compensate for economic loss resulting from a defendant's crimes. A claim for victim restitution must be supported by proper documentation, such as "copies of bills submitted to the California Victim Compensation Board reflecting the amount paid by the board and whether the services for which payment was made were for medical or dental expenses, funeral or burial expenses, mental health counseling, wage or support losses, or rehabilitation." (*Id*., subd. (f)(4)(B).)

Section 1202.4, subdivision (f)(1), gives the defendant a "right to a hearing before a judge to dispute the determination of the amount of restitution." However, a "defendant's inability to pay shall not be a consideration in determining the amount of a restitution order." (§ 1202.4, subd. (g); see *People v. Navarro* (2021) 12 Cal.5th. 285, 343-344 ["section 1202.4 permit[s] a trial court to consider a defendant's ability to pay in setting the amount of a restitution fine above the statutory minimum [citation], while it preclude[s] the court from considering the defendant's ability to pay in setting the amount of victim

restitution [citation], which is intended to reimburse a victim's actual economic loss"]; *People v. Nieves* (2021) 11 Cal.5th 404, 509 ["section 1202.4 provides that inability to pay shall not be a consideration in determining the amount of a restitution order"].)

"The burden is on the party seeking restitution to provide an adequate factual basis for the claim." (*People v. Giordano, supra*, 42 Cal.4th at p. 664; see *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.) First, the People must introduce prima facie evidence of economic loss incurred because of the defendant's criminal conduct. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).) "'Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. [Citation.] The defendant has the burden of rebutting the victim's statement of losses.'" (*People v. Pittman* (2024) 99 Cal.App.5th 1252, 1258; see *Millard*, at p. 26; *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543 (*Gemelli*); see also *People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115 ["To rebut a prima facie case, the defendant has the burden to disprove the amount of losses the victim claimed."].)

"Courts have broad discretion in fixing the amount of restitution, and they may use any rational method, provided it is reasonably calculated to make the victim whole." (*People v. Hurtado* (2019) 35 Cal.App.5th 871, 878; see *People v. Aguilar* (2016) 4 Cal.App.5th 857, 862.) The only limitation is that the amount of restitution the court orders must be factually supported, rationally calculated, and based on a showing of economic loss. (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 992; *People v. Ortiz* (1997) 53 Cal.App.4th 791, 794.) "There is no

requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121; see *People v. Prosser* (2007) 157 Cal.App.4th 682, 689-690; *People v. Bernal* (2002) 101 Cal.App.4th 155, 162.)

We review a restitution order for abuse of discretion, broadly and liberally construing a victim's restitution right. (*People v. Nichols* (2017) 8 Cal.App.5th 330, 342; *People v. Taylor* (2011) 197 Cal.App.4th 757, 761.) In reviewing the sufficiency of the evidence to support the trial court's factual findings in connection with a restitution award, the ""power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings."" (*Millard, supra,* 175 Cal.App.4th at p. 26; see *People v. Trout-Lacy* (2019) 43 Cal.App.5th 369, 373 [where "'the specific issue is whether the court's factual findings support restitution, we review those findings for substantial evidence'"]; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 [testimony, written statements, and receipts may be substantial evidence of the amount of victim restitution].)

B. *Basing the Amount of Restitution on the Prosecution's Undisputed Evidence Was Reasonable and Rational*

At the second restitution hearing, the prosecution submitted a document showing a breakdown of funeral expenses paid by the Board. Such a breakdown was sufficient to support the trial court's restitution award. (See § 1202.4 subd. (f)(4)(B).)

8

The court's decision to base the $5,000 restitution award on this documentation was rational and factually supported. (See *Gemelli*, *supra*, 161 Cal.App.4th at p. 1542 ["No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered."]; *People v. Akins* (2005) 128 Cal.App.4th 1376, 1382 [a restitution order "must be affirmed if there is a factual and rational basis for the amount"].)

C. *Earl Had an Opportunity To Dispute the Restitution Amount at the Hearing*

Earl asserts the trial court did not give him an "opportunity to challenge the award." The record does not support that assertion. At the hearing counsel for Earl received and reviewed the prosecution's evidence. Earl and his attorney had the opportunity to review the documentation from the Board, object to the evidence of victim restitution, or present additional evidence. Although Earl did not do any of those things, he certainly had the opportunity to. And Earl could have requested more time to review the documentation, but he did not. (See *People v. Kelly* (2020) 59 Cal.App.5th 1172, 1185 [defendant had notice and an opportunity to challenge the amount of restitution where counsel for the defendant declined the court's invitations to present evidence or request another restitution hearing]; *Gemelli*, *supra*, 161 Cal.App.4th at pp. 1545-1546 [where a defendant does not present evidence to rebut the restitution amount, the probation report and victim's statement of losses are presumed to be both credible and substantial].)

To the extent Earl is making a due process argument (although the words "due process" do not appear in his brief), such an argument fails. "'The scope of a criminal defendant's due

process rights at a hearing to determine the amount of restitution is very limited: "'A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed . . . , and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing.'" [Citation.] The hearing itself may violate due process if the procedures employed by the trial court 'are fundamentally unfair.'" (*People v. Marrero* (2021) 60 Cal.App.5th 896, 911.) The probation report stated the amount of restitution was $5,000, and the evidence at the hearing confirmed that amount. There was nothing unfair about the restitution hearing, fundamentally or otherwise. Earl had a full and fair opportunity to be heard on the amount of restitution.

## DISPOSITION

The victim restitution order is affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.